DECISION
{¶ 1} Relator, The Ohio State University, commenced this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting compensation for temporary total disability ("TTD") to respondent, Barbara J. Brown-Sullivan, and to issue a new order denying the requested compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M), of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In that decision, the magistrate found that the commission abused its discretion in granting TTD compensation because several of the medical reports were not evidence upon which the commission could rely. Specifically, the magistrate determined that the reports of Dr. Dixon are not evidence upon which the commission could rely because the disability determination was based in part upon non-allowed conditions. The magistrate reached the same conclusion with respect to the medical report of Dr. Kistler. However, the magistrate also found that the commission must give further consideration to whether Dr. Kistler's C-84 of May 2003 is based in part upon a non-allowed condition and to whether the C-84 is consistent with his office notes and other credible and reliable evidence. Therefore, the magistrate has recommended that we grant a limited writ ordering the commission to vacate its order and to give further consideration to claimant's request for TTD in a manner consistent with the magistrate's decision.
 {¶ 3} No objections were filed to the magistrate's decision.
 {¶ 4} Finding no error or other defect on the face of the magistrate's decision, pursuant to Civ.R. 53(C), we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the decision of the magistrate, the requested writ of mandamus is granted to the extent that it orders the commission to vacate its order granting TTD compensation and orders the commission to enter a new order granting or denying the requested compensation.
Writ of mandamus granted.
Brown and McCormac, JJ., concur.
McCormac, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), ArticleIV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. The Ohio State University,: Relator, : v. : No. 03AP-984 Barbara J. Brown-Sullivan and : (REGULAR CALENDAR) Industrial Commission of Ohio, : Respondents. :
 MAGISTRATE'S DECISION Rendered on March 24, 2004 Roetzel Andress, L.P.A., Douglas E. Spiker and Teresa E.Hohman, for relator.
Fullerton Law Office and Lawrence J. Ambrosio, for respondent Barbara J. Brown-Sullivan.
Jim Petro, Attorney General, and William McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} In this original action in mandamus, relator, The Ohio State University, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order granting compensation for temporary total disability ("TTD") to respondent Barbara J. Brown-Sullivan and to issue a new order denying the requested compensation.
Findings of Fact:
 {¶ 6} 1. In May 1993, Barbara J. Brown-Sullivan ("claimant") sustained an industrial injury, and her workers' compensation claim was allowed. She had surgery for a left rotator-cuff injury and also had a carpal tunnel release on the left side.
 {¶ 7} 2. Claimant returned to work. However, she subsequently experienced an exacerbating condition of her neck. Claimant was unable to work due to this neck problem, and she received TTD compensation.
 {¶ 8} 3. The allowed conditions were listed as follows in a July 2003 order of the commission (which is the order at issue in the present action):
Concussion; Contusion to head; strain to neck and left shoulder; shoulder sprain; rotator cuff; tendon tear, left shoulder; left shoulder impingement; herniated disc C5-6, C6-7 with spinal cord compression; disc protrusion with annular bulging C4-5.
This list of allowed conditions does not include "CARPAL TUNNEL SYNDROME — LEFT," which is included as an allowed condition in a document issued by the Bureau of Workers' Compensation ("BWC") in April 2003.
 {¶ 9} 4. Relator, in its reply brief, has agreed that "left carpal tunnel syndrome" is allowed in the claim. The magistrate may use the abbreviation "CTS" for "carpal tunnel syndrome."
 {¶ 10} 5. In March 2002, claimant had cervical spine surgery involving a discectomy and fusion at C5-6 and C6-7. In August 2002, the surgeon reported that the fusion was well healed. An MRI showed a C4-5 bulge, however.
 {¶ 11} 6. In October 2002, Charles J. Kistler, D.O., recommended narcotic injections for six months to treat claimant's continued neck pain.
 {¶ 12} 7. In December 2002, the managed care organization ("MCO") approved trigger point injections and epidural injections but denied narcotic injections as medically inappropriate for chronic pain.
 {¶ 13} 8. In December 2002, Dr. Kistler recommended that the C4-5 disc bulge be additionally allowed in the workers' compensation claim.
 {¶ 14} 9. On March 7, 2003, Robert Dixon, D.O., reported to Dr. Kistler that claimant had neck pain in the C4-5 area. Cervical traction had been tried without success. Dr. Dixon recommended a new MRI to evaluate the C4-5 area, and he opined that the C4-5 bulge should be added as an allowed condition in the claim. He recommended trying trigger-point injections for the pain. In addition, Dr. Dixon noted that claimant had significant shoulder pain upon range of motion. He did not identify the cause or the source of the shoulder pain, nor did he attempt a diagnosis. Rather, he stated that claimant should have an "orthopedic shoulder evaluation for persistent shoulder symptomatology." Dr. Dixon did not state whether the painful shoulder was on the left or right side.
 {¶ 15} 10. In March 2003, William R. Fitz, M.D., reported that the allowed conditions had reached maximum medical improvement ("MMI").
 {¶ 16} 11. In April 2003, the new MRI showed no cervical spinal stenosis. The alignment and height of the vertebrae were preserved. There was no mass effect on the cord or signal alteration, and the foramina appeared to be free. (The reporting physician noted, however, that a part of the view was obscured by the fusion hardware.)
 {¶ 17} 13. On April 18, 2003, Dr. Dixon reported that there was no residual cervical or foraminal stenosis at C5-6 or C6-7, and very minimal bulging at C4-5. Claimant reported that she continued to have numbness and tingling in her right hand Dr. Dixon believed that she had developed CTS symptoms on the right side, and he recommended x-rays and an EMG. Dr. Dixon concluded: "I do not see anything for which I could offer her surgical intervention in regards to her cervical spine at this time." However, he opined that claimant was developing CTS on the right side that "may require" surgical intervention at some point.
 {¶ 18} 14. On May 16, 2003, the EMG testing was performed by Dr. Skeels, who found mild CTS on the right side.
 {¶ 19} 15. On May 21, 2003, claimant was reevaluated by Dr. Dixon, who found that the cervical fusion had "healed quite nicely as she is now one year post-op spinal cord decompression C5-6, C6-7." He reported that claimant "is not having any pain in this area of her neck either anteriorally or posteriorally." Rather, "[h]er pain is primarily upper thoracic." Dr. Dixon recited the results of the recent EMG, but he recommended no further orthopedic treatment. However, he noted that, if claimant underwent general anesthesia for a carpal tunnel release at some point, she could have one of the cervical plates removed at that time to reduce interscapular pain.
 {¶ 20} 6. In May 2003, Dr. Kistler completed a C-84 report certifying TTD from May 2, 2003 to August 2, 2003, caused by the following conditions:
 847.0 — Sp. [Sprain] Cervical 850.9 — cerebral concussion 354.0 — CTS [carpal tunnel syndrome]
Dr. Kistler stated that the objective clinical findings were "Decreased ROM cervical" and "right shldr." The subjective finding was "Pain Rt Shldr."
 {¶ 21} 17. The BWC filed a motion asking the commission to terminate TTD based on MMI, and this motion was granted in June 2003 order by a district hearing officer.
 {¶ 22} 18. On July 22, 2003, a staff hearing officer vacated that order and continued TTD compensation as follows:
* * * [T]he injured worker remains temporarily and totally disabled due to the allowed conditions in this claim. Therefore, temporary total compensation is to be continued from the date of last payment to 08/01/2003, and to continue upon submission of medical evidence. This finding is based on the C84 of Dr. Kistler as well as the reports from Dr. Dixon.
 {¶ 23} 19. The employer appealed. On July 25, 2003, Dr. Kistler submitted an additional C-84 report, stating that a return to work was prevented by the following conditions:
 847.0 — Sp. [Sprain] Cervical 850.9 — cerebral concussion 354.0 — CTS Rt [carpal tunnel syndrome on the right side]
When asked to state the objective clinical symptoms supporting TTD, Dr. Kistler responded "Decreased ROM cervical" and "right shldr." The subjective findings were "Pain Rt Shldr."
 {¶ 24} 20. Further appeal was refused.
Conclusions of Law:
 {¶ 25} The employer argues that the commission abused its discretion in granting TTD compensation. As explained more fully below, the magistrate agrees. The reports of Dr. Dixon are not evidence on which the commission could rely in awarding compensation. In addition, Dr. Kistler's C-84 report of July 2003 is barred from evidentiary consideration. Further, Dr. Kistler's C-84 of May 2003 cannot be relied upon in the absence of the commission's resolution of several factual questions. Therefore, this cause must be returned to the commission to give further consideration to claimant's TTD request.
 {¶ 26} First, it is fundamental that an award of disability compensation must be based exclusively on allowed conditions.State ex rel. Chrysler Corp. v. Indus. Comm. (1998),81 Ohio St.3d 158. In other words, an award of compensation cannot be based even in part on a non-allowed condition. See, e.g., Stateex rel. Stone Container Corp. v. Indus. Comm. (1997),79 Ohio St.3d 163; State ex rel. Bradley v. Indus. Comm. (1997),77 Ohio St.3d 239, 242. Accordingly, a medical report basing disability even in part on a non-allowed condition cannot constitute "some evidence" to support an award of compensation. E.g., Stone Container, supra.
 {¶ 27} However, the presence of a disabling non-allowed condition does not preclude a TTD award. In such circumstances, the claimant must present evidence that the allowed condition, in and of itself, resulted in TTD, independent of the non-allowed conditions. E.g., Stone Container; Bradley, supra.
 {¶ 28} Second, TTD must be based solely on conditions that have not yet reached MMI. R.C. 4123.56(A). Maximum medical improvement is defined at Ohio Adm. Code 4121-3-32(A)(1) as follows:
* * * [A] treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. A claimant may need supportive treatment to maintain this level of function.
Under this rule, when medical treatments can provide no further functional or physiological improvement, the condition has reached MMI and claimant cannot receive further TTD compensation for that allowed condition, regardless of whether further palliative care is needed to manage pain or to maintain function.
 {¶ 29} Third, the claimant has the burden of proving that the disability is both temporary and total, and of proving a direct causal relationship between the allowed condition(s) and the period of claimed disability. E.g., Chrysler, supra.
 {¶ 30} In the present action, the commission relied on "the reports of Dr. Dixon" in granting TTD compensation. Because the commission did not specify which of his reports supported TTD, the magistrate addresses each of the reports during the relevant period on which the commission may have relied.
 {¶ 31} In April 2003, Dr. Dixon reported that claimant continued to have significant numbness and tingling in herright hand He stated his belief that claimant was developing CTS on the right side, which might require the same surgery that claimant had already had on the left side. However, the claim is not allowed for right CTS — only for left CTS. Accordingly, this report cannot support a TTD award.
 {¶ 32} In his May 2003 report, Dr. Dixon stated that the C5-6 and C6-7 fusion had healed "quite nicely" and that claimant was "not having any pain in this area of her neck." Rather, her pain was "primarily upper thoracic." However, there is no allowed condition for the thoracic spine. Dr. Dixon noted that the EMG testing indicated CTS, but those tests had indicated CTS only on the right side, for which no condition is allowed in the claim. Although Dr. Dixon addressed the allowed cervical conditions, he also relied in part on two non-allowed conditions — a thoracic problem and right CTS. Accordingly, this report must be removed from evidentiary consideration for TTD.
 {¶ 33} Similarly, in his report of March 2003, Dr. Dixondoes not indicate that claimant was rendered temporarily andtotally disabled by an allowed condition in and of itself. First,he noted that claimant was experiencing pain in the C4-5 area ofthe neck and opined that the C4-5 bulge should be allowed in theclaim. He recommended that an MRI and other tests be done toevaluate the C4-5 area, with a trial of injections for pain. Inaddition, Dr. Dixon reported that claimant was experiencing"significant" shoulder pain, but he did not identify a conditioncausing the shoulder pain nor identify which shoulder wasaffected. Rather than making a diagnosis with respect to theshoulder, Dr. Dixon recommended that claimant have an "orthopedicshoulder evaluation for persistent shoulder syptomatology."Further, he did not discuss the extent of impairment caused bythe C4-5 bulge nor the impairment caused by the undiagnosedshoulder condition. This report, like Dr. Dixon's other reports,does not support the award of TTD. Therefore, a limited writ ofmandamus is warranted.
 {¶ 34} The magistrate recognizes that, in some cases, a court in mandamus may remove one report from evidentiary consideration but decline to issue a writ because the other reports provide sufficient support independently. In the present case, however, the only other report on which the commission relied — the C-84 report of Dr. Kistler in May 2003 — must be further considered by the commission to determine questions such as the following: whether Dr. Kistler relied on the nonallowed condition of right CTS, whether Dr. Kistler relied on a right shoulder condition that was not allowed in the claim, and whether Dr. Kistler's office notes are inconsistent with the disability statements in his C-84 reports.
 {¶ 35} Before addressing the C-84 of May 2003, however, the magistrate notes that it is clear that Dr. Kistler relied on a non-allowed condition in his C-84 of July 2003. He stated plainly that TTD was caused partly by right CTS, which is not allowed in the claim. The C-84 of May 2003 also appears to be based in part on this non-allowed condition of right CTS, but the magistrate is not convinced that the question can be resolved conclusively in mandamus and recommends that the court direct the commission to address this question on remand The problem is that the C-84 of May 2003, on its face, lists only "CTS" as causing disability, and the question remains whether Dr. Kistler was relying on the allowed left CTS or the non-allowed right CTS.
 {¶ 36} The magistrate acknowledges that the record suggests strongly that Dr. Kistler, in the May 2003 report, was relying on claimant's recent problems with right CTS. After all, right CTS had been confirmed in April 2003 by an EMG report, which did not mention left CTS. Moreover, Dr. Dixon had reported several times that claimant was complaining of hand/wrist symptoms on theright side, not the left. In addition, Dr. Kistler explicitly stated in his July C-84 that he was basing TTD on right CTS, which suggests that he was also relying on right CTS in his May C-84.
 {¶ 37} Nonetheless, the magistrate believes that this question is for the commission to resolve as the sole evaluator of the credibility and weight of evidence. The first reason for this conclusion is that the record in mandamus includes several pages of Dr. Kistler's office notes, which are handwritten and difficult to read. This difficulty is compounded by the fact that the parties in mandamus chose to file copies that had been transmitted by facsimile and then xeroxed, making the copies even less legible. Because no party provided in its brief a recitation of the contents of these handwritten notes, the magistrate cannot determine whether Dr. Kistler's notes include any mention of leftor right carpal tunnel syndrome during the relevant period of claimed disability. Accordingly, the magistrate concludes that the commission must give further consideration to Dr. Kistler's office notes and C-84 report of May 2003.
 {¶ 38} Another problem with Dr. Kistler's C-84 certifications of TTD is that he relied on objective and subjective symptoms of the right shoulder, but the record does not indicate any allowed condition of the right shoulder. Instead, the claim is allowed for conditions of the left shoulder. Thus, Dr. Kistler appeared to have relied on a non-allowed condition of the right shoulder in certifying TTD. At oral argument, however, respondent argued that the doctor's statement about right shoulder symptoms could have been intended to describe a symptom of cervical sprain, an allowed condition. The magistrate concludes that this potential interpretation of the evidence should be considered by the commission in the first instance as the finder of fact, especially as the commission already needs to give further consideration to Dr. Kistler's C-84 report and office notes.
 {¶ 39} An additional problem with Dr. Kistler's certification of TTD is that he stated on both C-84 forms in 2003 that TTD was caused in part by the concussion that claimant sustained in 1993. However, the magistrate was unable to find in Dr. Kistler's office notes any indication that claimant was suffering from concussion symptoms that were disabling. Thus, a significant question is raised as to whether the C-84 and the office notes are materially inconsistent.
 {¶ 40} In considering this matter, the magistrate noted that, according to Taber's Cyclopedic Medical Dictionary (18th Ed. 1997), page 427, the symptoms of concussion include unconsciousness, dizziness, unequal pupils, alteration in pupil size, lowered temperature, shock, vomiting, rapid pulse, etc., none of which are clearly noted in Dr. Kistler's office notes. Further, Taber's states that narcotic medication is contra-indicated for a concussion, so that Dr. Kistler's recommendation of narcotic medication suggests that he did not believe that his patient was suffering from a concussion in 2003. Nonetheless, the magistrate is reluctant to conclude as a matter of law that these office notes say nothing of concussion symptoms and are therefore fatally inconsistent with the C-84. Again, the reason is that the office notes are largely illegible and that an evidentiary hearing is needed to determine their contents. As before, the magistrate believes that the commission as the finder of fact must make the determination of what these notes contain and whether they are inconsistent with the doctor's assertion of a disabling concussion as set forth in his C-84.
 {¶ 41} Last, one of the order's flaws is that carpal tunnel syndrome was not identified as an allowed condition at all, although the SHO relied on a C-84 that based TTD in part on carpal tunnel syndrome, thereby creating a material inconsistency in the order. For the purposes of mandamus consideration, the magistrate has accepted the parties' agreement that the claim is allowed for left carpal tunnel syndrome, as set forth in the list of allowed conditions issued by the BWC in April 2003. However, the magistrate has not intended to resolve any issue as to what is allowed in the claim, which is not a permissible subject for mandamus review.
 {¶ 42} The supplemental evidence filed by respondents includes commission orders setting forth a list of allowed conditions that mentions only "carpal tunnel syndrome" without any indication of right or left. Although the magistrate has accepted the BWC listing of "CARPAL TUNNEL SYNDROME — LEFT" for purposes of mandamus review, the magistrate cannot ignore that the order at issue lists no carpal tunnel condition at all as being allowed in the claim, and that other commission orders list "carpal tunnel syndrome" with no indication of whether one or both sides were affected. Therefore, the magistrate believes that the commission should be directed to provide a considered recitation of which conditions were previously allowed in the claim, citing the allowance orders, before it proceeds to address the TTD issue. The findings of fact above merely recite what is stated in various documents, but neither the findings of fact or conclusions of law should be viewed as presenting a conclusive determination as to the allowed conditions, a matter that must be clarified by the commission on remand
 {¶ 43} The magistrate therefore recommends that the court grant a limited writ returning this matter to the commission to vacate its order and to give further consideration to claimant's request for TTD. In particular, the commission must give further consideration to whether Dr. Kistler's C-84 of May 2003 is based in part on a non-allowed condition and whether it is consistent with his office notes and otherwise credible and reliable evidence. The commission must then issue a new order granting or denying the requested compensation.
 P.A. Davidson
P.A. DAVIDSON MAGISTRATE